All right, court is back in session. The next case on the docket is the United States of America v. B.G.G. And Nicole Mariani is here for the appellate, the United States. David Marcus is here for appellee B.G.G. And Miss Mariani, you may begin with your argument. Good morning, your honors, and may it please the court. I'm Assistant United States Attorney Nicole Mariani, and I'm appearing on behalf of the government. There are two roads upon which this court can travel to resolve this appeal. The district court's limited authority under Rule 48-A, or the plain language of the statute of limitations. And both roads lead to reversal of the district court's order dismissing the information with prejudice. On the first road, the district court exceeded its limited authority under Rule 48-A when it denied the government's motion without finding the government sought the dismissal in bad faith. The district court's anticipatory analysis of the timeliness of a future indictment was procedurally improper and incorrect. Both the Supreme Court and this court in cases such as Rinaldi and Mata have been clear that the authority granted to district courts to deny Rule 48-A motions must be narrowed to preserve the constitutional separation of powers. To that end, Rule 48-A motions can only be denied where the defendant demonstrates a rebuttal of a presumption of good faith. Does the prosecutor sought the dismissal in bad faith? As the Supreme Court explained in Rinaldi, this analysis is not concerned with the government's reason for bringing the prosecution or its strategy and whether or not it will maintain the prosecution. It is only concerned with the stated reason for dismissal. And bad faith is narrowly defined and very rarely found. Here, the district court did not find that the government's reason for the dismissal, which was that EGG asserted his Fifth Amendment right to prosecution, was made in bad faith. Instead, the district court... Judge Littlebrooks does say that the government sought to obtain a tactical advantage to deny EGG's constitutional rights. That seems to me that's tantamount to a finding of bad faith. I think you'd be correct if the test was that the government brought the prosecution in bad faith. Here, the question is, did the government seek the dismissal in bad faith? And of course, we agree with Judge Littlebrooks' decision on the merits. So that hook is, why did we seek the dismissal under Rule 48a? Why did we seek the dismissal? We sought the dismissal because EGG asserted his Fifth Amendment right to prosecution by indictment. At that point, that's why we sought it. And we believed, we sought the dismissal to uphold that Fifth Amendment assertion and believe based on our legal analysis, which is in line with the majority of the case law and the plain language of the statute of limitations, that we could obtain a timely indictment against EGG. If you think about the reason for the dismissal, this isn't a case where the government could have proceeded on an adjudication, but was trying to defer prosecution. Could the government have gone to another district and sought the return of an indictment, a district outside of the Southern District of Florida? That's a point BGG makes in his brief. One thing we would point out with that venue is this was consistent with the way we had in charge all of the instance cases. If you look at the information, all the charge of offense conduct occurred at EGG's office in Palm Beach. That's where he accepted the payments. That's where he was seeing patients. In addition, if you think about this within the broader pragmatic question of the pandemic, you're now asking us to go to another jurisdiction during time when there were travel bans, when there were rolling court closures, that didn't really seem to be a pragmatic solution. And again, under Rule 48A and the separation of power, the government has primacy in its charging decisions, including deciding what district to charge a case at. Could the government have afforded itself of this procedure, even in the absence of a suspension of grand juries by the chief judge of the district court? I mean, can the government do this anytime it wants to? If the statute of limitations is running? Correct. Under the, we believe under the clear statutory language and the plain meaning of section 3282 and 3288, as Congress has written them, that yes, at any time under the plain language of 3282, if the government files an information that tolls the statute of limitations, and this is sort of moving into that second argument. But if you look at the plain language of section 3282, it states that the limitations period is told when the information is instituted. Seems like if the government thought that it had the authority to do that anytime it wants to, that it would not have gone to Congress and asked Congress to extend the statute of limitations. If the statutory scheme has already allowed this tactic and Congress said no, Republicans and Democrats, and there's been a slew of former United States attorneys who agree with that position. We believe that Congress's passage of the CARES Act is consistent with the government's position. First, I want to note that there's nothing in that largely economic legislation. My question is, if you thought you had the authority to do that, why ask Congress to extend the statute of limitations? And then Congress says no. Why we did that was sort of a belt and suspenders approach. What that proposed legislation indicated was not that we did not believe we could use 3282 in this way. What it indicated was that DOJ was encouraging Congress to provide a clear and simple answer to the tension of grand jury suspension will cause between the statute of limitations and the fifth amendment right to prosecution by indictment, despite, or perhaps due to the very clear statutory language in section 3282, very few courts have addressed. What does the phrase instituted in information mean? Well, well, the Supreme court is, uh, um, interpreted the word Institute and JVN versus the United States. It's a tax case. But the Supreme court says the filing of a complaint by a, um, the tax commissioner does not institute the complaint because it does not effectively begin the criminal process involves a complaint, not an information, but why should the rationale be any different with respect to what information? Yes. In the case of JVN versus United States is distinguishable on two fronts. First in JVN, the Supreme court was interpreting a statute of limitations for tax offenses that permitted a nine month extension, where, and this is important, a complaint is instituted before a commissioner of the United States. It added before a commissioner of the United States that is not present in section 3282. If you think about what is before a commissioner of the United States me and what does a complaint mean? At that time under the version of federal rule of criminal procedure four that was in place, a commissioner could institute a complaint only if he found probable cause first. That was a draft. So the Supreme court rejected the argument that filing a complaint in that case under that particular statute without a probable cause determination instituted it because that interpretation removed the role of the commissioner and the statute of limitations specifically referenced the commissioner. Um, so that does not, that does not translate into our case, right? Because there's a material difference. Well, both statutes use the verb instituted. The tax statute also included that for applause before a commissioner of the United States, that's a container further direction directive. That's not in section 3282. In addition, JVN's reasoning was tied to the fact that as you referenced, it involved a complaint, a complaint cannot be created. It cannot be drafted until a commissioner finds it is supported by probable cause. That is a prerequisite. But in contrast for information's information's exist, when a prosecutor drafts, there's no other further hurdle it needs to cross. We are drafted and then it's filed. That is all sort of the path that an information takes to draft. Um, and then that filing begins both the criminal proceedings and it confers subject matter jurisdiction on the federal courts. In contrast, the government could not create a complaint that would begin the proceedings or confer federal subject matter jurisdiction without that probable cause determination. So that's why the Supreme court did define institute in a different way in JVN, but I don't think it's applicable to our case because we're dealing with immateriality of statute of limitations. But I think sort of loops back into really what we're looking at is what did Congress say? Congress here drafted a very clear on ambiguous statute of limitations. It says the information must be instituted. As saying, what is instituted me, which as EGG agrees, the term instituted means inaugurated, commenced, or began. It connotes a rigid nation and establishment. The object of the verb instituted in section 32 82 is the information. That's all the statute requires is that the information come into existence or be established within five years because it's a pleading and information comes into existence when it's filed with the court, that's when it becomes a legal document and a filed information is not a legal nullity, not only does it initiate the criminal charges, but it can first subject matter jurisdiction on the federal courts because it alleges an offense against the United States. After the Supreme court's 2002 case in cotton, that is all that is required to confer federal subject matter jurisdiction. In addition, a filed information commits the defendant to be in filing responsive. There's no suggestion in 32 82 of any further requirements. And that statutory language is really the beginning and the end of our analysis. You know, to counter that clear statutory text, EGG points to rule seven B, which is a claim processing rule that outlines the procedure for a defendant to waive his fifth amendment right under that rule, you would agree that you would agree that counsel that our standard of review is whether or not judge middle roots, and I know he's sort of, he is his interpretation of the statute of this rule disagrees with that of judge Hoffman, but you would agree that we're bound by an abusive discretion standard of review in this case. Yes, because we are within the denial of a rule 48 a motion that applies, but again, within abusive discretion, if someone makes an error of law, that is still per se abusive discretion, if there's an error of law, all right. All right. If the court has no further questions, the government will reserve the rest of its time for rebuttal. All right. We'll hear from the appellate. Thank you, your honor. May it please the court. My name is David Marcus and I represent BGG. It's nice to see everybody. Um, I'd like to start with the Jaben case. Cause I think that's the controlling case here. And, and it obviously comes from the Supreme court. Um, Jaben talks about what instituted means. Um, and, and it does so in another statute of limitations, uh, statute and context. So the Supreme court in that case determined that a case was not instituted for, for tolling the statute of limitations just by filing a complaint. And the Supreme court makes a difference between institute and filing. And, and, um, so the government in Jaben argued the same thing that it's the complaint operated to give them a nine month grace period under the statute. And the government said, listen in, in Jaben, um, we didn't need to comply with all the other federal rules of criminal procedure, as long as we filed it and then dismissed it. And what does the Supreme court say? It says no way says the government's position quote provides no safeguard, whatever to prevent the government from filing a complaint at a time when it uses the nine month period to make it. Um, the court interpreted the word institute to require the complaint be quote adequate to begin effectively the criminal process prescribed by the federal criminal rules. So does the filing of the information here, is it adequate to begin effectively the criminal process prescribed by the criminal federal criminal rules, clearly not. And, and the government admits that it knew that when it filed it, that there was not going to be a waiver under rule seven. Um, and so how did we get off on this wrong track? Um, and not following Jaben in this case, what happened was the seventh circuit, um, a long time ago came out with a contrary decision and, and didn't discuss or engage Jaben. It dropped it in a footnote and said, because it's a different statute, it doesn't apply. Um, and so then all these other cases sort of followed suit and we got off on the wrong track. Judge Middlebrooks rightly said, listen, we have to see what institute means, um, under both the plain meaning of the words and what the Supreme court says and the legislative history. By the way, um, I know in a lot of the arguments this weekend, this morning, we've been talking about, um, the Garner text, Garner and Scalia. Garner and Scalia talk about when the Supreme court defines a word, unless there's a contrary indication in the statute, we should go with that definition. And the Supreme court in Jaben defined institute as not merely filed. It has to comply with the federal criminal rules and, and everybody agrees that it did not do so. I mean, under the government's reading, a secretary could file it, uh, before the court without any supervision, because that operates to start it. Or if an indictment, uh, doesn't go before the grand jury and, and some indictment, uh, on a top of a piece of paper and files it, that would somehow be instituted or filed. That's not enough under the statute. We must comply with the rules and the fifth and sixth amendment obviously apply. And that's why judge Wilson, you were right when you pointed out DOJ going to Congress, obviously DOJ went to Congress because they were concerned that they didn't have enough time under the statute with the pandemic. And so, uh, they asked for a year and it was rejected. It wasn't just rejected by, uh, you know, a slim majority of, of Democrats or liberals, it was rejected overwhelmingly by both sides. Mike Lee said over my dead body. Um, it's pretty rare, especially today to see both sides of the aisle come forward and say, we're not doing something. Uh, we agree and speak in a unified front. Speaking of unified, it wasn't just, it's not just criminal defense lawyers who are on the side of BGG here. We have the Cato Institute, former prosecutors, NACDL. It's very rare to see this group of, uh, amici come together and support. Uh, a criminal defendant, which it has done. So here I'd like to move also to the point, um, judge Wilson, that you asked the government about the only way it could have proceeded in this case. It is not true that the only way, as the government says in its brief, it could have proceeded was by a grand jury indictment, um, in Miami or in South Florida, excuse me, there were nine other districts where venue was available, including the middle district. Um, and, and in this case, this was a big group of these cases that have been brought across the country in different districts, um, and it had been brought within the five years without a problem. The, what happened here is the, the case went through three different prosecutors, they waited to the last minute and then they couldn't bring it. But they couldn't bring it in the Southern district, but they could have brought it in a number of other districts where, uh, there were grand juries sitting, I think also we should look at what the government's reading of this statute means. It means, first of all, like judge Wilson, you pointed out, this isn't just in a time of a pandemic. At any time the government wants, it can just basically say, we give ourselves a six month extension, even if the information is invalid, even if it doesn't follow the rules, we can give ourselves a six month extension. Um, it's also true that they're reading would mean that the information is valid under some rules, but not, uh, invalid under others, which I just want to confirm the six month extension only applies when the statute of limitation passes. Right. Correct. Your honor. Correct. Correct. And what they did here, just so you know, it's not like you're adding six months to the speeding. That's not, this is a different situation. This is six months added because they file an information, they dismiss it. And the statute of limitation expires and then they dismiss, you can dismiss the next day. Correct. Correct. And, and, and, you know, if you look at what they did here, I mean, it raises eyebrows, they, they charge by information, knowing that there was no doesn't let the defense know until the day the statute runs. So we can't move, so we can't inform the court about our position until it's too late. Um, what do we do? I'm sorry. Okay. Thank you. Judge Wilson. Um, with regards to rule 48, how do you address the argument about separation of powers that the executive has the prerogative to dismiss, uh, uh, an information or a complaint at, at, at its prerogatives and that it's, it's not for the district court to deny, uh, a dismissal. Sure. And, and to me, this is the easiest of the points for the defense, um, because rule 48 says with leave of court. And so everybody agrees that the government has to go to the court and get leave to dismiss. And everybody agreed that this case should be dismissed. Judges will go. The question is, should it be dismissed with or without prejudice? And the 11th circuit and every court has said that bad faith on path of the government doesn't mean like some subjective evil motive, it means a tactical advantage and, and it was pretty striking. I think that the government conceded just now that if we were talking about filing the information, they can see that that is tactical, um, that that would be brought under rule 48 a that, that the filing itself, they're saying the same thing, they dismissed it so that they could qualify under this, um, so that they could refile and file it at a time more convenient for them. And where there was a grand jury, that is the whole point of dial, um, which said that in order to receive a tactical advantage and derogation of the defendant's rights, um, same with Rinaldi, where they said it's filed, dismiss, refile is what bad faith means. Um, and if we don't, if we're going to require cases to be filed, dismissed and refiled before we can brought it, it's really going to undercut the purpose of a, the statute of limitations, which is to give a cleared stopping point for a case. It's also going to require defendants to spend an awful lot more money. Um, litigating the case. And if a district judge like, uh, judge middle Brooks's colleague, judge Altman denies it, you can't get to this court until you go all the way to trial and lose. So this is why it's a, it's much better for it to be raised as it was in this procedural proster under rule 48. And as judge Wilson pointed out, it's, it's an abuse of discretion. Stat standard. Let me ask you about that. Could we say that judge middle Brooks abused his discretion by failing to seven circus decision in verdict Dana? No, your honor. Because what, what judge middle Brooks did, of course, the seventh circuit opinion was not binding. Um, the Jaben court is, is binding and, and, and the words of the statute are binding. So what judge middle Brooks said is I'm following Jaben. I'm following the words of the statute. I'm following the legislative history. Uh, and I also judge middle Brooks said fine that it was done. Um, for a tactical reason, as you pointed out, he made that explicit finding under rule 48 a, which that use the magic words. So he didn't use the words bad faith. No, but he used the words tactical, your honor. And that's that this court in dials said bad faith is a tactical is, is tactical reason it doesn't mean subjective. Bad motives. So this court, this court has already found as, as every court Rinaldi in the Supreme court, every court has found, um, that bad faith means a tactical reason. And, and the government has admitted that this was a tactical reason so that it could rebring the case. That's a, by the way, that's what, what case, what case, Mr. Marcus, can you say, uh, stands for that proposition that tactical means bad faith. Sure. It's a dial from the Supreme court, which is eight 68. F second four 24, eight, 1989 cases. And I'll just quote it that dismissal can be with prejudice. If the government seeks dismissal quote, in order to achieve a tactical advantage. Um, there's other cases, the pits case, which we've cited in our brief from the DC district court. The Rinaldi case from the Supreme court says that the whole point of rule 48 is to stop a harassment of a defendant where there's a case brought dismiss for a tactical advantage and then re brought. And one of the examples that's used judge Lagoa in the cases is, you know, if we get to a jury and, and the government sees the jury and doesn't like it and just dismisses it and rebrings the case for, uh, at a later time, they weren't doing it for an evil subjective intent. They were doing it for a tactical advantage. They didn't like how the jury looked. So they, so they dismiss and rebring the case here. Um, they, they dismiss because they knew we wouldn't waive the information. They knew their information was invalid and they wanted to bring it at a time later, clearly for tactical reasons. Um, a couple last points that I think are important. Um, I know it's, it's not great to talk about legislative history these days, but the legislative history clearly supports us. The government doesn't even take issue with it in their brief. They don't take us on on that. And, and for good reason, because, um, in 1964, when 32 88 was amended to include informations, um, the Senate report says, um, the amendments would therefore permit reindictment in similar cases where an information was prosecuted by indictment. I mean, it could not be clear. So if we're, if the words are ambiguous, which I really don't think they are. Um, we can look to the legislative history for support, by the way, just to talk about the words for one second. Um, you know, the prosecutor and I agree that institute sort of means in one sense to, to start, right. To start something. So I've been trying to think of an analogy about starting. And, you know, I thought about the Olympics where we're watching a race begin and all the runners are at the blocks and there's the starter guy with the little starter pistol who shoots, you know, to start everybody for running. If a racer jumps the gun, we call that a false start, right? It doesn't institute the race. The race has not begun. If the, if the runner jumps the gun here, the prosecutor jumped the gun. There was no consent to the information. There was no waiver. It was a false start. The prosecutor admitted that a false start does not institute anything. This, this information didn't count for anything. Um, and so we can't use it to institute anything. Um, so, so just, I know my time's running up and I've been saying a lot and speaking fast. So I just want to make sure I don't forget anything here. And to sum up and finish up, the words are clear. Congress didn't say file. The Supreme court is clear that institute does not mean file. It has said, so this court should follow Jabin and the 11th and the Supreme court. The legislative history is clear. Um, and, and finally the maxim, that statute of limitations should be read in favor of repose in favor of cases being quiet, that's clear here. So for all of those reasons, because judge Middlebrooks had the authority under rule 48 with leave of court to say, I'm doing it with prejudice because this was tactical and he did use those magic words and he didn't make those findings. We shouldn't make defendants go all the way to an indictment and to trial when this case is clear. There's a lot of other cases pending watching this one. And so we shouldn't make all the litigation wait until the end of a trial or end of litigation. We have this case teed up now it's ready. And, uh, the case should be affirmed. Thank you for listening. All right. Thank you, Mr. Marcus, Ms. Mariani, you've reserved some time for rebuttal. Yes, your honors. Um, first, I just want to say the government has not conceded anything was tactical. Um, our argument is that to the extent we're going to go to the underlying merits dealing with the statute of limitations, we are making use of congressionally authorized procedures within the statute of limitations in section 32 82 and 32 88 and speaking of section 32, I mean, you're not conceding it, but the district court did find that it was done as a, in order to obtain a tactical advantage and to deny, um, BGG is constitutional right to be charged, um, within the statute of limitations by grand jury. I mean, that's a finding that, uh, um, was made by the, um, by the, by the district court, the district court did use that phrase. We disagree with it clearly. Um, I mean, it's not, I mean, this is a criminal case. I mean, it's not a clearly erroneous finding. Um, and the district judges have deference to make those sorts of findings, right? Yes. Judges do make deference. Our argument would be to the extent it's been premised on an error of law, which is a misunderstanding of the plain meeting of the statute of limitations in 32 82 and 32 88 and what Congress has expressly stated the government may do. When it's charging documents, then yes, it would be a clear error to make that finding if it's premised on an underlying error of law, speaking of 32 88, um, my opposing council had mentioned the legislative history of that statute. He was referring to the legislative history in 1964. The curious thing about that statute. It was again, amended in 1988 in 1988 Congress in the 1964 version. It said that that section 32 88 savings clause applied to an information that was filed after the defendant waves in open court prosecution by indictment. In 1988, Congress removed that phrase after the defendant waves in open court prosecution by indictment in the Senate report, accompanying that 1988 amendment, which is the official legislative history, as opposed to say tweets that have appeared on the internet, it explains that the defendant no longer has to first wave an open court prosecution by indictment for the savings clause to apply to a dismissed information. Because section 32 88 should encompass the dismissal of an information for any reason that would not bar for their prosecution, we've also been talking a little bit about the word filed versus the word instituted, and I think section 32 88 shed some light on that section 32 88, which provides a savings clause for charges that are dismissed after the limitations period expires. Um, explain that the second brief limitations period applies to charges that were filed within the limitations period, but then were dismissed after the limitations period for any reason, except where the reason for dismissal was the failure to file an indictment or information within the limitations period or some other reason that would bar dismissal that verb choice filed to describe an act that renders both an indictment or an information timely indicates that Congress intended for the terms instituted and filed to be synonymous that Congress is instituted in 1382, which was passed in 1790. And then the word filed in section 32 88, which was written in 1948 to describe that same moment when the statute of limitations is told is logical in section 1382 Congress at a time when American criminal procedure was being developed, specified an indictment tools, the statute of limitations when it is found. And an information tools, the statute of limitations, when it is instituted, those different verbs, you know, the different paths, those two charging documents need to take and draft it. Specifically, a list of allegations written by a prosecutor does not become an indictment until it is found by that grand jury, but a list of allegations written by a prosecutor becomes an information that can be filed. Once it's written by the prosecutor. So the use of those two different verbs found and instituted confirmed that an indictment and an information still had to adhere to their different drafting requirements. Now we get to section 32 88, which was. Again, using that word filed in 1948, Congress will no longer need to be so This is because the federal rules of criminal procedure were passed in 1946. Those laid out how an indictment and an information work. In addition, the applicability of this 32 88 savings clause hinges on whether the charging document told the statute of limitations. In that context, the word filed could be used to cover both an indictment and an information because it's that final step of filing that tools limitation period. And there was no need to be redundant. That was already specified in section 32 82. Judge Wilson, may I ask one more, one more question? Absolutely. Um, counsel in the, in the dial case that Mr. Marcus referred to, um, this court went through the requirements of rule 48 a. Yes, there. Um, I think it was judge Gravitch specifically said, uh, the question, the parties agree that the question, whether rule 48 a requires a government to Can you tell me, uh, what does the record show was a reason for the government seeking the dismissal under the rule 48, uh, motion? Um, what did you articulate to judge Middlebrooks? I believe what I was articulating to judge Middlebrooks was that we were seeking the dismissal because he had chosen to invoke his right. His fifth amendment right of conversely, he had declined to waive prosecution by indictment. And because he had declined to waive prosecution by indictment, we could no longer proceed on the information, which is correct under rule seven. Within the context of explaining that argument, the prosecution did go on and explain why it had done things the way it had, which was that it believed it could file the information, thus instituting the information and tolling the statute of limitations. And then it then how could you believe that you could file the information when rule seven says that, because this is a felony, correct? This is a felony case. This is, it's never been a misdemeanor case, correct? Correct. So under what belief did the government have that rule seven did not require for a, uh, a conference or some, uh, representation or written statement or letter sent to Mr. Marcus, who was representing the defendant asking whether or not they would waive, he would waive the indictment. Um, there's nothing of that sort required in the text of rule 70. Um, there's nothing in rule seven B that prohibits the filing of an information without a prosecution waiver, or that says an information can not be prosecuted, cannot be filed without a waiver of prosecution. Um, and indeed, if you look through the procedure of rule seven B, which requires notifying the defendant of the charges in the information in open court and then accepting his waiver, it sort of presupposes that the information does already exist. So, so what did the government, uh, tell judge Middlebrooks with regard to why it could not file, um, or take this case to the grand jury before the suspension of the grand jury, because of the pandemic, because this was really just done at the last minute. What was the reason? I mean, the government had plenty of time to take the case to the grand jury before the judge Moore's order. We've heard that the grand jury was suspended on, I believe, March 26th, 2020, um, this information was filed at the end of August, 2020, which was after this is not a, this is not a reactive case. This is an investigative case. And when did the government have commenced its investigation? Um, unfortunately that's not in the record. I honestly, I have to be candid with the court. I I'm not sure that's not on our record and appeal when the investigation began, but I can tell you that when the grand jury suspension occurred, we still had over five months remaining on the five-year statute of limitations under 3282. Um, at the time it occurred, the COVID pandemic was at least for myself. And I think most people entirely unexpected. Um, that first grand jury suspension that judge Moore issued was only 30 days. He then continued to issue rolling 30 day orders every 30 days. Um, we quite frankly, we're hoping grand jurors would come back. We would be able to indict this case. But by the time, uh, when did the statute of limitations run? It was in August, correct? I believe it was August 31st. Right. In August and the grant, the grand jury's commenced by then. No, they did not resume until November 17th. Until November. Okay. In the Southern district of Florida. In the Southern district of Florida. They did not resume until November 17th. And at that time they were only doing two grand jury sittings a week, which is a very small fraction of how many you usually have. Right. Right. If the court has no further questions, um, the government will rest on its brief and request that the district court's order be reversed. Thank you. Thank you. Miss Mariani and Mr. Marcus. Thank you all. Thank you both. Thank you. Nice seeing everybody. Have a nice weekend. You too. And that completes our docket for this week and the court is adjourned.